Wetterau Grocer Company, Inc. v. Commissioner.
Wetterau Grocer Co. v. Commissioner
Docket No. 16146.
United States Tax Court
1949 Tax Ct. Memo LEXIS 200; 8 T.C.M. (CCH) 434; T.C.M. (RIA) 49106; May 4, 1949
*200 "Series A debenture notes" issued in exchange for preferred stock, held under the facts to represent capital investment and payments to holders thereof although designated as "interest" are not deductible as interest paid. John V. Lee, Esq., and John W. Snider, C.P.A., 318 N. 8th St., St. Louis, Mo., for the petitioner. Gene W. Reardon, Esq., for the respondent. ARNOLD
Memorandum Findings of Fact and Opinion ARNOLD, Judge: This case involves income and declared value excess-profits taxes and excess-profits taxes for the taxable years 1943 and 1944 as follows: Declared
Excess
Income
Value Excess-
Profits
Year
Tax
Profits Tax
Tax
1943
$1,167.97
$231.00
$ 958.75
1944
901.33
501.97
4,146.99 The question presented is whether amounts paid during the years 1943 and 1944 to the holders of certain debenture notes constituted dividends or were deductible as interest paid. Petitioner, in its return, deducted $4,180.62 as remodeling costs in 1944. It was stipulated that $1,975.09 of said amount was deductible as ordinary repairs and the balance, $2,205.53 was a non-deductible capital expenditure. This will be taken care of *201 under Rule 50 computation. The case was submitted on oral testimony and exhibits. Findings of Fact Petitioner filed its return for the taxable years with the collector of internal revenue for the first district of Missouri. Petitioner is a corporation organized February 1, 1913 under the laws of the State of Missouri with its principal place of business at St. Louis, Missouri. The business was originally established in 1869 by the Wetterau family. Its name was changed from G. H. Wetterau & Sons Grocer Company to Wetterau Grocer Company, Inc. It has always been engaged in the wholesale grocery business. Its stock has at all times been closely held by members of the Wetterau family. In 1924 petitioner paid a stock dividend to its common stockholders in the form of 500 shares of preferred stock having a par value of $100 a share. On March 31, 1939, a special meeting of the company was held at which all the stockholders, including those holding the whole amount of the outstanding preferred stock of the company were present in person and unanimously approved the minutes herein set forth, so far as the same are material to issue presented: "The chairman stated that the purpose *202 of the meeting was to discuss and continue the reorganization and recapitalization of the company and in furtherance of same to have the stockholders vote on a plan previously discussed, authorizing the company to issue an aggregate of $100,000.00 in Series A., one to seven per cent., fifty year debenture notes, the rate of interest to be in the discretion of the directors, according to earnings, payable on the 30th day of June and the 31st day of December in each year, to be subordinate to the claims of general creditors, but superior to the claims of stockholders, callable at par, with accrued interest, after five years, on any interest date, upon thirty days' written notice, the notes not to be sold or assigned by the holders without notice to the company and ample opportunity to redeem and to exchange the outstanding preferred stock for a like amount of said notes; * * * "After a full discussion, it was unanimously: "RESOLVED: That the President and Secretary of the Company be and they are hereby authorized, empowered and directed to make, execute and deliver all of any part of an aggregate of One Hundred Thousand Dollars ($100,000.00) of Series A debenture notes, in denominations *203 of One Hundred Dollars ($100.00) or any multiple thereof, in the following form, and to do any and all acts necessary to render the same effective: "$ St. Louis, Missouri
"Fifty years after date, for value received, we promise to pay to the order of the sum of DOLLARS with interest at the rate of not less than one per cent. nor more than seven per cent. per annum, as fixed by the Board of Directors, payable semiannually on the 30th day of June and the 31st day of December in each year. "All claims other than capital stock liability shall rank superior to this note. All holders of Series A debenture notes shall rank with each other superior to stockholders. After the payment of such interest, dividends to stockholders may be declared and paid out of net earnings. After five years, upon giving thirty days' written notice, prior to any interest date, this note may be redeemed by the company at par, with accrued interest. This note shall not be sold or assigned without notice to the company, and ample opportunity to redeem. * * *
"And it was further unanimously: "RESOLVED: That the outstanding preferred stock of the company be retired as of March 31st, 1939, with interest *204 adjusted from January 1st, 1939, by exchanging therefor a like amount of Series A. debenture notes, with the consent of the preferred stockholders, in the following form: "We, the undersigned, holding all of the issued and outstanding preferred stock of the company, do hereby agree to exchange our present holdings for a like amount of the above described fifty-year Series A debenture notes. The stockholders also authorized the issuance of all or any part of $100,000 Series B twenty-five year debenture notes with three per cent straight interest not to be subordinate or inferior to the claims of creditors. After March 31, 1939, $50,000 Series A debenture notes dated April 1, 1939 were issued to the preferred stockholders in exchange for the 500 shares of preferred stock which comprised all of petitioner's outstanding preferred stock. The $50,000 balance of authorized Series A debenture notes has never been issued. During each of the taxable years 1943 and 1944 the Board of Directors of petitioner corporation by resolution voted to pay seven per cent on its said outstanding $50,000 Series A debenture notes. In accordance therewith petitioner made the following payments to the *205 Series A debenture noteholders: $1,750 on June 30, 1943; $1,750 on December 31, 1943; $1,750 on July 15, 1944; and $1,750 on December 29, 1944. Petitioner deducted the said sum of $3,500 as interest in each of its Federal tax returns for the years 1943 and 1944. Opinion The petitioner paid $3,500 in each of the years 1943 and 1944 on its Series A debenture notes and deducted these amounts from gross income as interest paid. The respondent determined that such amounts constituted dividends to stockholders and were not deductible. Petitioner contends that the Series A debenture notes were evidences of indebtedness rather than in the nature of stock, and cites , affirmed by the Supreme Court, . In John Kelley Co. v. , the Supreme Court affirmed two Tax Court decisions on this question. In both cases, as here, a familycontrolled corporation was involved and registered notes or debentures were exchanged for stock. In the Kelley case there were sales of the debentures as well as exchanges for stock, a trust indenture under which the debentures *206 were issued, the debentures matured in 20 years, were assignable without regard to a transfer of stock, and promised to pay 8 per cent interest, if earned. In the Talbot Mills case registered notes were exchanged for stock, none was sold for cash. The notes matured in about 25 years and provided for interest of not less than two per cent nor more than 10 per cent, computed according to a formula based upon net earnings. Interest might be deferred until maturity by the directors. The notes were transferable by endorsement and notation on the company's books. There was no trust indenture to secure payment. The Tax Court held the debentures in the Kelley case created an indebtedness () and the notes in the Talbot Mills case represented a capital investment (). In the present case the purpose of issuing the debentures was said to be the raising of new capital. However, they were exchanged for preferred stock which had been issued as a stock dividend and no new capital was actually brought into the business. None was sold for cash, as in the Kelley case. They matured in 50 years. Transfer was limited by the requirement that notice be given *207 to the company with an opportunity to redeem. There was no trust indenture or other provision to secure or enforce payment of principal or interest. The rate of interest was from one to seven per cent in the discretion of the directors, according to earnings. This rate of interest provision was not as definite as in the Talbot Mills case. The payment of a variable rate of return as fixed from time to time by the directors according to earnings is a characteristic of stock, not of a debt. In the Talbot Mills case we said: "In the light of these facts, it appears that what the parties really intended to create was a security retaining the profitsharing advantage of stock, leaving intact their voice in the management, but extending a tax advantage to the corporation not possible in stock. This would seem to create no proper indebtedness. This being so, the 2 per cent minimum provision of the note will stand upon no better footing than the whole." This statement is largely applicable here. Accordingly, the respondent's determination is sustained. Decision will be entered under Rule 50.